Filed 6/24/26  P. v. Wence CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>BRIANNA PEARLETTE WENCE,<br><br>   Defendant and Appellant. | A172745<br><br>(San Mateo County Super. Ct. No. 23-SF-017126-C) |

Brianna Pearlette Wence pled no contest to being an accessory to a felony (Pen. Code, § 32)[1], and, pursuant to a negotiated disposition, the trial court placed her on formal probation for two years on the condition that she serve 90 days in county jail.  Wence appeals, challenging only the trial court's denial of her motions for developmental disability diversion (§ 1001.20 et seq.).  The People contend her appeal must be dismissed because the trial court refused her request for a certificate of probable cause.  We agree and dismiss the appeal. (See § 1237.5; Cal. Rules of Court, rule 8.304(b).)

## BACKGROUND

### A.

"The developmental disability diversion program applies in any case where misdemeanor or most felony charges are brought

---

[1] Undesignated statutory references are to the Penal Code.

1

against 'any person who has been evaluated by a regional center and who is determined to be a person with a developmental disability by the regional center, and who therefore is eligible for its services.'  ([Pen. Code,] § 1001.21, subds. (a), (b).)  A ' "[d]evelopmental disability" ' 'means a disability that originates before an individual attains 18 years of age, continues, or can be expected to continue, indefinitely, and constitutes a substantial disability for that individual.'  ([Pen. Code,] § 1001.20, subd. (a); Welf. & Inst. Code, § 4512, subd. (a)(1).)  ' "Substantial disability" means the existence of significant functional limitations in three or more of the following areas of major life activity . . . : [¶] (A) Self-care. [¶] (B) Receptive and expressive language. [¶] (C) Learning. [¶] (D) Mobility. [¶] (E) Self-direction. [¶] (F) Capacity for independent living. [¶] (G) Economic self-sufficiency.'  (Welf. & Inst. Code, § 4512, subd. (l)(1).)"  (*People v. K.D.* (2025) 110 Cal.App.5th 1, 16 (*K.D.*).)

"Importantly, the trial court has a sua sponte duty to consult with relevant agencies (the prosecution, regional center, probation, and defense counsel) to determine whether a defendant may be diverted.  (§ 1001.22, subd. (a).)"  (*K.D., supra*, 110 Cal.App.5th at p. 16.)  When the court suspects that a defendant may have a developmental disability, "and the defendant consents to the diversion process and to the case being evaluated for eligibility for regional center services, and waives their right to a speedy trial, the court shall order the prosecutor, the probation department, and the regional center to prepare reports on specified aspects of the defendant's case."  (§ 1001.22.)

## B.

In 2024, the San Mateo County District Attorney charged Wence and two codefendants, by information, with second degree robbery (§ 212.5, subd. (c).)

On October 14, 2024, Wence moved for developmental disability diversion, pursuant to section 1001.22.  She supported

2

her motion with copies of individualized education program (IEP) documents—dated between 2010 and 2014—from when Wence was in middle school and high school.  The trial court heard argument but reserved its ruling.  A few days later, a jury trial began.

Wence renewed her motion for diversion (while trial remained ongoing), on October 21, 2024, when the parties indicated they had reached a potential resolution via plea bargain.  Defense counsel argued that her IEP records "raise a suspicion that she may have a developmental disability as defined by the statute."  The prosecutor argued the IEP records were "stale."

The trial court denied the motion without prejudice.  It found Wence's evidence insufficient to trigger a referral for reports under the diversion statute (Pen. Code, §§ 1001.22, 1001.20, subd. (a); Welf. & Inst. Code, § 4512, subds. (a), (l)(1)).  The court explained:  "I did review about 75 to 80 pages of IEP records. . . . There does appear to be some learning issues that originates prior to [age] 18.  I don't know . . . -- they are about nine or ten years old -- if that is enough to say it can continue or expect to be continued.  I'm guessing, based on what I read, I could expect it to be continued, some of her learning disabilities.  [¶ . . . ¶] But . . . I think, at this point, there is just not enough information for the Court to refer it to [the regional center] based on IEP records about a decade old and nothing new."

Immediately after the court denied diversion, Wence entered a plea of no contest to being an accessory, in exchange for a negotiated sentence of two years on felony probation and 90 days in county jail (among other conditions).  The robbery charge was dismissed.

At the sentencing hearing, Wence renewed her request for the trial court to refer her, under section 1001.22, to the regional center for developmental disability screening.  The trial court

denied the motion, agreeing with the prosecutor that it was too late and observing "[t]here is no new information." Consistent with the plea bargain, the court suspended imposition of sentence and placed Wence on formal probation for two years on the condition (among others) that she serve 90 days in county jail.

Wence's trial counsel filed a timely notice of appeal from the judgment (order of probation). Although Wence indicated that she was appealing a judgment entered after plea of guilty or no contest, her counsel did *not* check any of the boxes indicating that her appeal was (a) based on sentencing or other post-plea matters, (b) based on the denial of a motion to suppress, or (c) a challenge to the validity of his plea. Instead, defense counsel checked the following box: "Other basis for this appeal" and wrote that Wence was appealing after "denial of developmental disability diversion . . . prior to entry of plea." On the second page of the notice of appeal, Wence indicated that a certificate of probable cause was requested and explained that the trial court's purportedly erroneous denial of her request for developmental disability diversion was the grounds for the request. The trial court denied the request for a certificate of probable cause.

## DISCUSSION

### A.

Wence insists the trial court erred by declining to refer her for developmental disability evaluation. We agree with the People that Wence's appeal must be dismissed because she did not obtain a certificate of probable cause.

Because the cognizable bases for an appeal from a conviction on entry of a guilty or no contest plea are limited (*In re Chavez* (2003) 30 Cal.4th 643, 649), "section 1237.5 serves to prevent frivolous appeals." (*People v. Johnson* (2009) 47 Cal.4th 668, 677 (*Johnson*).) Section 1237.5 provides (in relevant part): "No appeal shall be taken by the defendant from a judgment of

conviction upon a plea of guilty or nolo contendere . . . *except* where *both* of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." (Italics added.)

A defendant need not obtain a certificate of probable cause *if* the appeal after a guilty or no contest plea is based on grounds that arose *after* entry of the plea and that do *not* affect the plea's validity. (Cal. Rules of Court, rule 8.304(b)(2); *People v. Mendez* (1999) 19 Cal.4th 1084, 1096 (*Mendez*); *People v. Panizzon* (1996) 13 Cal.4th 68, 74 (*Panizzon*).) When, however, a challenge to the sentence is, in substance, a challenge to the validity of the plea, the defendant must obtain a certificate. (*Panizzon,* at p. 76.)

Despite her assertion that the appeal raises only post-plea matters that do not affect the validity of the plea, Wence's claim—that the trial court's denial of diversion was erroneous—necessarily calls into question the legality of the proceedings that resulted in her plea. (See *People v. Padfield* (1982) 136 Cal.App.3d 218, 228 (*Padfield*) [claim of wrongful denial of pretrial diversion under former section 1001 "implicate[s] 'other grounds going to the legality of the proceedings' "].) Courts have held that other diversion schemes require a certificate when a defendant's appeal is taken from a judgment of conviction based on a guilty or no contest plea. (*People v. Robinson* (2024) 100 Cal.App.5th 133, 135-136 [because a defendant is only eligible for pretrial mental health diversion until adjudication, an ineffective assistance claim, based on attorney's failure to seek diversion, cannot be raised as a noncertificate " 'matter occurring after plea' "]; *People v. Moore* (2024) 104 Cal.App.5th 90, 94 (*Moore*) [same]; *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887-888;

*Padfield,* at p. 228 [wrongful denial of diversion claim under former section 1001 "may be raised on appeal by a certificate of probable cause after a plea of guilty or nolo contendere"].)

In fact, one of the few published opinions addressing developmental disability diversion implicitly concluded (albeit without analysis) that the certificate of probable cause requirement applies. (See *K.D., supra,* 110 Cal.App.5th at p. 15, fn. 3 ["[d]efendant's amended notice of appeal and receipt of a certificate of probable cause preserved the issue for appellate review"].)

Nonetheless, Wence attempts to distinguish the developmental disability diversion scheme from other diversion statutes by pointing out section 1001.21, subdivision (a), specifies that the chapter applies "whenever a case is before any court upon an accusatory pleading *at any stage* of the criminal proceedings, for any person who has been evaluated by a regional center and who is determined to be a person with a developmental disability by the regional center, and who therefore is eligible for its services." (Italics added.)

True, *Robinson, Moore, Qualkinbush,* and *Padfield* all involved different diversion schemes. However, we find no meaningful distinction between the statutes that would undermine application of the same reasoning here. (Compare § 1001.21, subd. (a) with § 1001.36, subd. (f)(1) [" '[p]retrial diversion' means the postponement of prosecution, either temporarily or permanently, *at any point in the judicial process from the point at which the accused is charged until adjudication*, to allow the defendant to undergo mental health treatment"], italics added, § 1001.36, subd. (e) ["[a]t *any stage of the proceedings*, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion"], italics added.)

6

Our Supreme Court, in *People v. Braden* (2023) 14 Cal.5th 791 (*Braden*), interpreted section 1001.36 to mean that a defendant's request for pretrial mental health diversion is timely if made before attachment of jeopardy at trial or entry of a guilty or no contest plea, whichever occurs first. (*Id.* at pp. 801, 810-812, 819; but see *id.* at p. 812, fn. 13 [noting that "[t]he diversion scheme for individuals with cognitive disabilities . . . has not yet been construed by any appellate court" and declining "to undertake that task"].) Accordingly, this division concluded, in *People v. Moore, supra,* 104 Cal.App.5th 90, that an attorney's purported ineffective assistance—in failing to request pretrial mental health diversion—cannot be a matter occurring *after* the plea. (*Id.* at p. 94.)

Like mental health diversion, a grant of developmental disability diversion postpones the prosecution of criminal charges. And a defendant who performs satisfactorily on diversion is entitled to have their charges dismissed. (*K.D., supra*, 110 Cal.App.5th at p. 17; compare §§ 1001.23, subd. (b), 1001.28, 1001.31 with § 1001.36, subds. (f) & (h).) The statutory language explicitly contemplates that the defendant will be facing "charges", not a conviction, at the time diversion is granted. (§§ 1001.23, subd. (b), 1001.31; see *Braden, supra*, 14 Cal.5th at p. 807.) If the regional center determines that a defendant does not have a developmental disability or if their performance on "*pretrial* diversion" is deemed unsatisfactory, the criminal proceedings will be reinstated. (§§ 1001.23, subd. (a), 1001.29, subd. (a); *K.D.,* at p. 17; cf. § 1001.36, subd. (g).) Furthermore, the developmental disability diversion statutes, like those governing mental health diversion, "give[] the court no authority to set aside a plea or trial verdict, which would be required if diversion were granted after 'adjudication' of guilt by trial or plea." (*Braden,* at p. 807.) Both statutory diversion schemes also require the defendant consent to diversion and "waive[] their right to a speedy trial." (§§ 1001.22, 1001.36, subd.

(c)(2).) It appears that the conclusion reached in *Braden* would apply here too.

Finally, Wence's diversion motion—which she renewed after her plea, prior to sentencing—is also an attack on the sentence that she negotiated in her plea. She seeks diversion rather than the probationary term (with jail time and other conditions) that she bargained for. This, too, requires a certificate of probable cause. (See *Johnson, supra*, 47 Cal.4th at p. 678 ["[e]ven when a defendant purports to challenge only the sentence imposed, a certificate of probable cause is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement"]; *Panizzon, supra*, 13 Cal.4th at p. 79 ["a challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself"].)

Because Wence's entire appeal is subject to section 1237.5's certificate of probable cause requirement, but she failed to obtain one, we must dismiss the appeal. (See *Mendez, supra,* 19 Cal.4th at p. 1099; Cal. Rules of Court, rule 8.304(b)(3) ["[i]f the defendant does not file the written statement required by . . . section 1237.5 or the superior court denies a certificate of probable cause, the appeal will be limited to issues that do not require a certificate of probable cause"].)

**B.**

Wence asks us (in the alternative) to treat her appeal as a petition for writ of mandate from the trial court's denial of her request for a certificate of probable cause.

A petition for writ of mandate is the exclusive remedy for challenging a trial court's wrongful refusal to issue a certificate of probable cause. (*Johnson, supra,* 47 Cal.4th at p. 676; *People v. Castelan* (1995) 32 Cal.App.4th 1185, 1188.) Wence did not file a writ petition within 60 days of the denial. (See *Volkswagen of*

8

*America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701.) Assuming (for the sake of argument) that we were persuaded that section 1237.5's certificate of probable cause requirement could be so easily subverted (but see *Castelan*, at p. 1188; *Mendez, supra,* 19 Cal.4th at p. 1099 [§ 1237.5 is to be applied strictly]), we conclude that Wence fails to demonstrate her entitlement to writ relief on the merits.

The evidence does not support a suspicion that Wence may have a " '[d]evelopmental disability' " that "constitutes a substantial disability." (Pen. Code, § 1001.20, subd. (a); Welf. & Inst. Code, § 4512, subd. (a)(1).) Substantial disability means "the existence of *significant functional limitations* in *three or more* of the following areas of major life activity . . . : [¶] (A) Self-care. [¶] (B) Receptive and expressive language. [¶] (C) Learning. [¶] (D) Mobility. [¶] (E) Self-direction. [¶] (F) Capacity for independent living. [¶] (G) Economic self-sufficiency." (Welf. & Inst. Code, § 4512, subd. (l)(1), italics added.) Welfare and Institutions Code section 4512, subdivision (a), includes intellectual disability, cerebral palsy, epilepsy, and autism within the definition of developmental disability.

Here, the IEP evidence does not raise suspicion that Wence may have a qualifying developmental disability. (See § 1001.22; *K.D., supra*, 110 Cal.App.5th at p. 16.) The evidence merely shows that Wence received special education services 10 years before her offense because she had a learning disability affecting language and learning and a psychiatric disorder that also affected learning. Regulations exclude from the definition of "[d]evelopmental disability" handicapping conditions that are "[s]olely psychiatric disorders where there is impaired intellectual or social functioning which originated as a result of the psychiatric disorder . . . [¶] [and] . . . [s]olely learning disabilities." (Cal. Code Regs., tit. 17, § 54000, subds. (c)(1)-(2).)

## DISPOSITION

The appeal is dismissed.


BURNS, J.

WE CONCUR:


JACKSON, P. J.
SIMONS, J.

*People v. Wence (A172745)*

10